UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**JEFFREY HYSON**,

        Plaintiff,

        v.

**MICHAEL J. ASTRUE**, Commissioner,
Social Security Administration,

        Defendant.

Civil Case No. 3:11-CV-01173-KI

OPINION AND ORDER

    Merrill Schneider
    Schneider Caver Law Offices
    P. O. Box 14490
    Portland, Oregon  97293

        Attorney for Plaintiff

    S. Amanda Marshall
    United States Attorney
    District of Oregon

Page 1 - OPINION AND ORDER

Adrian L. Brown
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon  97201-2902

Kathryn A. Miller
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington  98104-7075

      Attorneys for Defendant

KING, Judge:

Plaintiff Jeffrey Hyson brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI").  I reverse the decision of the Commissioner and remand for further proceedings.

## BACKGROUND

Hyson filed applications for DIB and SSI on June 30, 2006.  The applications were denied initially and upon reconsideration.  After a timely request for a hearing, Hyson, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ") on August 5, 2009.

On October 5, 2009, the ALJ issued a decision finding that Hyson was not disabled within the meaning of the Act and therefore not entitled to benefits.  This decision became the

final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ on August 3, 2011.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The evaluation is carried out by the ALJ. The claimant has the burden of proof on the first four steps. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007), cert. denied, 128 S. Ct. 1068 (2008); 20 C.F.R. §§ 404.1520 and 416.920. First, the ALJ determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied.

Page 3 - OPINION AND ORDER

Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Parra, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards.  Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005).  Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance.  Id.  "[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision."  Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004) (internal citations omitted).

## THE ALJ'S DECISION

The ALJ found Hyson had the severe impairments of cervical and lumbar degenerative disc disease and a somatoform disorder.  The ALJ concluded these impairments, either singly or in combination, did not meet or medically equal the requirements of any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  Hyson had the residual functional capacity to lift and carry ten pounds occasionally and frequently.  During an eight-hour day, Hyson could walk four city blocks at a time, and stand or walk for one hour at a time.  He was limited to only occasional use of his right (dominant) hand to engage in fine manipulation.  He experienced moderate impairments in his short-term memory and in his ability to maintain concentration and attention.  His stamina was reduced by 20 percent of a normal person's.

Relying on the testimony of a vocational expert ("VE"), the ALJ concluded that while Hyson could not perform his past relevant work, he could perform work as an office helper, a call out clerk, or a cashier.

## FACTS

Hyson was 45 years old at the time of his alleged onset of disability–June 27, 2006. He has a high school degree plus a few years of college, and had worked as a material handler for Daimler Trucks and then for Freightliner from 1993 to June of 2006.

Hyson underwent three surgeries to fuse four vertebrae in his neck in 1994, 1998 and 1999, and two surgeries to fuse vertebrae in his lumbar spine, in 1999 and 2000. He took prescription medications including vicodin, ms contin, neurontin, toprol, cymbalta, and zanaflex to manage his pain. Before his onset date of disability, he attended physical therapy. His primary care physician, Kristin Kocher, M.D., and others in her medical group, wrote letters excusing Hyson from work from 2000 (a total of 2 days) to 2005 (approximately a total of 35 days up to June 23). No letters excusing him from work are in the record from 2006, but on June 29, 2006, Dr. Kocher informed Hyson's employer that "Jeffrey has severe, chronic back pain from degeneration, and will be unable to work for a least 1 year." Tr. 671.

Hyson testified that he was terminated from Freightliner at the end of June 2006; he also testified that he stopped working because he could not work without the medications he had to take to manage his pain. Dr. Kocher noted in Hyson's medical record on June 29, 2006 that Hyson's employer would not allow him to take medications at all, that when Hyson had stopped taking medications in the past he could not function, and that he was considering disability. Dr. Kocher "agree[d] that pt must take these medicaitons [sic] to be functional, and cannot stop taking them. Needs to stop work now" and Hyson will apply for disability. Tr. 254. Her notes reflected Hyson's pain improved with heat, did not worsen with sitting, did worsen with hip

Page 6 - OPINION AND ORDER

flexion, and was not relieved by lying down. She noted straight leg raises were positive at 30 degrees.

On September 21, 2006, Dr. Kocher completed a Physical Residual Functional Capacity Report. She checked that Hyson could lift less than 10 pounds but only for two hours or less, could stand and/or walk less than two hours in a workday, could sit but must periodically alternate sitting and standing to relieve pain, could climb occasionally, but could never balance, stoop, kneel, crouch, or crawl. She checked that Hyson could occasionally reach in all directions, handle, finger, and feel. Of the options, she chose Hyson should avoid frequent exposure to cold, heat, humidity, noise, fumes, odors, and hazards. She concluded Hyson should avoid occasional exposure to wetness and vibration. She diagnosed osteoarthritis of the spine and gave a poor prognosis.

Hyson was treated at a pain management clinic from July 2006 through March 2007. On July 30, 2007, he reported to a provider in Dr. Kocher's medical group that he had been fired from his pain management clinic and he did not know why; the provider followed up and learned Hyson had been discharged for compliance issues. A note in the record from Dr. Kocher's medical group indicates: "No narcotics from this office." Tr. 341.

Dr. Kocher's only visits with Hyson in 2007 did not involve his complaints about back pain. One was in April for pneumonia and the other was in early July for depression. Tr. 252, 342. In a letter dated November 26, 2007, Dr. Kocher pronounced Hyson "completely disabled." Tr. 670.

Hyson underwent an endoscopy in 2008 to evaluate a gastrointestinal bleed related to multiple gastric/prepyloric ulcers due to his nonsteroidal anti-inflammatory medications. He was

Page 7 - OPINION AND ORDER

provided medications through the Multnomah County Health Department from October 2007 through June 2009.

## DISCUSSION

I.    <u>Severe Impairment</u>

The ALJ concluded Hyson suffered from the severe impairments of cervical and lumbar degenerative disc disease and a somatoform disorder. Hyson argues the ALJ should also have considered his radiculopathy as a severe impairment.

A medically determinable impairment must be established through signs, symptoms, and medically acceptable clinical or laboratory findings but under no circumstances can be established through symptoms–namely the individual's own perception of the impact of the impairment–alone. <u>Ukolov v. Barnhart</u>, 420 F.3d 1002, 1005 (9th Cir. 2005). In order to be "medically severe" the impairment must have "more than a minimal effect on" the claimant's physical or mental abilities. SSR 85-28.

Hyson references his repeated complaints of pain in his legs from radicular symptoms. In addition to medical assessments of radiculopathy in 2004 and 2005, Hyson also points to two places in the record after his onset date of disability in which a physician assistant diagnosed lumbar radiculopathy, on August 8, 2006, and a doctor diagnosed chronic lumbar strain with right radiculopathy, on September 20, 2007. Tr. 234, 496. Hyson asserts his radiculopathy would affect his ability to walk and stand at work.

The Commissioner argues that radiculopathy is a symptom, not an impairment. It is for the ALJ to assess how much Hyson's pain limited Hyson's functional capacity. Here, the ALJ imposed standing and walking limitations, and a limitation on stamina.

Hyson responds that the National Institutes of Health define radiculopathy to be "any disease that affects the spinal nerve roots." <u>Herniated Disk Definition</u>, Medline Plus, National Institutes of Health, U.S. National Library of Medicine, http://www.nlm.nih.gov/medlineplus/ency/article/000442.htm (last visited Nov. 20, 2012).  Any error was not harmless, according to Hyson, because he experiences pain radiating down one or both legs and has pain radiating to his arms.  According to Hyson, a "diagnosis" of radiculopathy substantiates his claims of pain.

It is not clear whether radiculopathy, as used by Hyson's medical providers, is a symptom or an impairment itself.  <u>See</u> www.back.com/symptoms-radiculopathy.html (last visited Nov. 20, 2012) ("Doctors use the term radiculopathy to specifically describe pain, and other symptoms like numbness, tingling, and weakness in your arms or legs that are caused by a problem with your nerve roots.").  In any event, the ALJ considered Hyson's allegations of pain–including his assertion that he experienced pain radiating on and off daily from the fusion sites in his neck and legs–and agreed Hyson would experience the symptoms he alleges if he attempted to exceed the residual functional capacity assessed by the ALJ.  However, given Hyson's ability to work for years following the fusions, his daily activities, the routine nature of his treatment and infrequent trips to his doctor, and his drug-seeking behavior suggesting he exaggerated his symptoms, the ALJ found Hyson not so impaired as to preclude all work.  Hyson does not challenge the ALJ's assessment of his credibility.

If the ALJ erred in failing to identify radiculopathy as a severe impairment, as opposed to a symptom, any error was harmless because the ALJ considered the limitations caused by the pain and imposed lifting and walking limitations, and limitations on the use of his right hand.

Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (step two error harmless if ALJ considered limitations at step four).

II.      Medical Opinion

The ALJ declined to afford significant weight to Dr. Kocher's September 21, 2006 residual functional capacity report because it was "not well supported by medically acceptable clinical and/or laboratory diagnostic studies and [was] inconsistent with other substantial evidence in the case record[.]" Tr. 22.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. Id. (treating physician); Widmark v. Barnhart, 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. Orn, 495 F.3d at 632; Widmark, 454 F.3d at 1066. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. Widmark, 454 F.3d at 1066 n.2. Hyson challenges the ALJ's conclusion, asserting it is not supported by specific and legitimate reasons.

The ALJ described the form Dr. Kocher completed as a "fill-in-the-blanks" kind of form, noting the absence of any reasoning to support Dr. Kocher's opinions and the lack of any of Dr.

Kocher's own clinical notes prior to issuing this opinion explaining the limitations she imposed. The ALJ hypothesized that Dr. Kocher had "inadvertently stepped out of her role as an objective treating medical source and assumed the role of an advocate." Id. He also observed that the form had been provided by the claimant's representative "solely to generate evidence for the current appeal and, although such evidence is certainly legitimate and deserves due consideration, the context in which it was produced cannot be entirely ignored." Id.

The ALJ gave specific and legitimate reasons for finding Dr. Kocher's functional assessment entitled to little weight. An ALJ is not required to accept the opinion of a physician, even a treating physician, if the opinion is "brief, conclusory, and inadequately supported by clinical findings." Batson, 359 F.3d at 1195; Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (permissible to reject check-off reports from physicians that do not contain any explanation of the bases for the conclusions). Here, Dr. Kocher marked boxes on a form without providing any explanation for her opinions. Her last treatment note of Hyson was from June 29, 2006, over three months before completing the functional assessment, and her *only* visit with Hyson that year. At that visit, Hyson complained of chronic back pain with radiation to his hip and leg. He reported that the pain did not worsen with sitting and was not relieved by lying down. Hyson's straight leg raise was positive at 30 degrees, and his strength, reflexes, and sensation were normal. He believed he could not perform heavy work (driving fork lifts, lifting) without pain medication, and Dr. Kocher agreed. That same day she wrote a note to Hyson's employer opining that Hyson would be unable to work for at least one year.

The last time Dr. Kocher had written a note to Hyson's employer excusing him from work was almost exactly a year before. Dr. Kocher's notes from her June 29, 2006 visit did not

Page 11 - OPINION AND ORDER

indicate she had evaluated Hyson's ability to lift, sit or stand. Instead, she agreed that Hyson needed to take medications to perform the heavy work required by his employer and, without those medications, he "need[ed] to stop work now" to pursue disability. Tr. 254. As the ALJ found, "A review of her clinical notes prior to offering this opinion fails to reveal any supporting evidence for the limitations she imposed." Tr. 22.

Additionally, Dr. Kocher only examined Hyson twice in 2007, neither of which involved his complaints about back pain. Yet, in a letter dated November 26, 2007, Dr. Kocher pronounced Hyson "completely disabled[,]" without further explanation. Tr. 670.

Notably, a note from the Multnomah County Health Department, where Hyson had established care the month before, and issued just before Dr. Kocher's "completely disabled" opinion, reflects Hyson had "[t]aken meds as directed with good relief" and he "denie[d] side effects from pain med." Tr. 37. He was walking and biking for exercise, and only reported "some pain with walking." Id. Other than a bicycle fall in December of that year, which resolved in about four months, Hyson reported improvement with medication, was looking into getting a job at the post office and, beginning in the middle of 2008, reduced his doctor visits to every six months. As the ALJ noted, "[T]he treatment has been essentially routine and/or conservative in nature, and has been generally successful in controlling [his] symptoms. Furthermore, the office visit notes reflect significant periods of time during which the claimant did not specify any particular complaint and relatively infrequent trips to the doctor for the allegedly disabling symptoms[.]" Tr. 20. As a result, there is ample support for the ALJ's conclusion that Dr. Kocher's opinions are "inconsistent with other substantial evidence in the case record[.]" Tr. 22.

It is true, as Hyson points out, that before his onset date of disability several doctors excused Hyson from work due to his back and neck pain. However, such evidence simply supports the ALJ's conclusion that Hyson could not perform his past relevant work. Those letters say nothing about Hyson's ability to perform work within the lifting and walking limitations outlined by the ALJ.

The ALJ did not err in finding Dr. Kocher's opinions entitled to little weight.

III.     Vocational Expert Testimony

Hyson challenges the vocational expert's testimony because he asserts it conflicts with the Dictionary of Occupational Titles (the "DOT"). Specifically, Hyson argues that two of the positions–officer helper and cashier–require frequent fine manipulation and a light exertional level (meaning exerting up to 20 pounds of force occasionally), when Hyson's RFC limits him to only occasional use of his right hand to engage in fine manipulation and to only lifting and carrying ten pounds. Additionally, Hyson contends he cannot perform the last occupation–a call out clerk– given his moderate impairments in short-term memory and ability to maintain concentration and attention, as well as his limitations in pace.

The DOT raises a presumption about the job classification but the presumption is rebuttable. The ALJ may rely on expert testimony which contradicts the DOT if the record contains persuasive evidence to support the difference. Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995). The ALJ specifically asked the VE about jobs that would allow for Hyson's moderate impairment in fine manipulation in the right hand, and where "[p]ushing and pulling would be limited to short-time spans where the force required wouldn't be more than 10 pounds." Tr. 769. The VE identified the jobs of cashier and office helper, noting that they were

Page 13 - OPINION AND ORDER

in the light category. The VE did not explain why a person who was limited to pushing and pulling ten pounds could perform a light job which is categorized as requiring the exertion of up to 20 pounds of force occasionally. Additionally, the VE did not explain whether Hyson, with a limitation in fine manipulation in his dominate hand, could perform the frequent fingering required by the jobs of cashier and officer helper. On the present record, a conflict exists between the VE testimony and the DOT.

That leaves the call out clerk position. The DOT for call out clerk requires a reasoning level of 3, which means he needs to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." DOT, App. C, 1991 WL 688702. Hyson suggests that his moderate impairments in short-term memory and ability to maintain concentration and attention translates to a limitation of performing simple and routine tasks, which conflicts with a finding that he can perform jobs requiring a level 3 reasoning level. The ALJ assigned a moderate impairment in short-term memory and ability to concentrate due to Hyson's pain levels. Tr. 771.

Typically the ALJ will translate limitations in memory, concentration and attention into an opinion about the kind of work a claimant can perform. For example, a limitation to simple, repetitive work can account for moderate difficulties in concentration, persistence or pace. See Sabin v. Astrue, 337 Fed. App'x 617, 621 (9th Cir. 2009) (moderate concentration, persistence or pace difficulties consistent with medical evidence that claimant could perform simple and repetitive tasks); Howard v. Massanari, 255 F.3d 577, 582 (8th Cir. 2001) (limitation of often having deficiencies of concentration, persistence or pace which was interpreted by a doctor into a

Page 14 - OPINION AND ORDER

functional capacity assessment of being "able to sustain sufficient concentration and attention to perform at least simple, repetitive, and routine cognitive activity without severe restriction of function" was adequately captured in a hypothetical for "someone who is capable of doing simple, repetitive, routine tasks"); Hamilton v. Astrue, No. 03:11-CV-6063-HU, 2012 WL 3314303 (D. Or. June 15, 2012) (the "end result of [claimant's] concentration and/or attention difficulties was that she could do simple, routine tasks on an independent basis").

Here, the ALJ did not make a finding about what kind of work Hyson could perform. The cases I have cited above generally support the notion that moderate limitations in concentration and pace may translate to jobs involving only simple and repetitive or routine tasks. However, courts in this circuit have generally found a limitation to performing simple and routine work is not compatible with a job requiring a reasoning level of 3. See Glass v. Astrue, No. EDCV 12-417-OP, 2012 WL 4848735, * 3 (C.D. Cal. Oct. 10, 2012) (explaining difference between simple tasks versus simple, repetitive tasks); Whitney v. Astrue, No. 3:10-CV-1403-HU, 2012 WL 712985, at *4 (D. Or. Mar. 1, 2012) (remand to resolve conflict between VE's testimony about jobs carrying reasoning level of 3 and a limitation to performing simple 1-2 step tasks); see also Signavong v. Astrue, No. EDCV 10-917-MAN, 2011 WL 5075609, * 7 (C.D. Cal. Oct. 25, 2011) (describing split in circuits, and citing district court cases in the Ninth Circuit). If a moderate impairment in short-term memory, concentration and attention does in fact translate to an ability to perform only simple and repetitive tasks, case law suggests the ALJ has not met his burden that Hyson could perform the job of call out clerk.

Since the ALJ did not specifically probe the VE to determine whether a person with moderate impairments in short-term memory and ability to maintain concentration and attention

Page 15 - OPINION AND ORDER

could perform a job with a reasoning level of 3, and since the VE did not explain how Hyson could perform as a call out clerk given the reasoning levels assigned by the DOT, there may be a conflict with the VE testimony and the DOT. Notably, Hyson's prior work required only a reasoning level of 2.

The ALJ erred in failing to resolve any conflicts between the VE's testimony and the DOT.

IV.   Remand for Further Proceedings

Based on my finding that the ALJ failed to address conflicts between the VE testimony and the DOT, I find a reversal and remand for additional evidence or hearing is required. McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002) (identifying three factors to consider in deciding whether to award benefits, one of which is whether there are issues to be resolved).

## CONCLUSION

The decision of the Commissioner is reversed. This action is remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for rehearing to further develop the record as explained above. Judgment will be entered.

IT IS SO ORDERED.

Dated this ___26th___ day of November, 2012.

　　　　　　　　　　　　　　　　　　　　　　　  /s/ Garr M. King
　　　　　　　　　　　　　　　　　　　　　　　Garr M. King
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge